lml
# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| vs. ) | Case No. 06-40005-01-JAR |
| ) | |
| **BILLIE EUGENE MAY,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

## MEMORANDUM ORDER AND OPINION

The sole issue before the Court is whether defendant Billie May is competent to stand trial. On October 26, 2006, the Court held a competency hearing pursuant to 18 U.S.C. § 4241. The Court heard expert testimony from Dr. George Hough on behalf of defendant, then took the matter under advisement. After reviewing the reports and testimony, the Court issued an Order directing further evaluation by a medical doctor or psychiatrist, specifically with respect to the number and dosage of medications defendant is using (Doc. 54). A second hearing was held January 9, 2007, where the Court heard argument regarding the report prepared by Dr. William Logan, M.D. The Court has reviewed defendant's supplemental submissions, and is therefore prepared to rule. For the reasons stated below, the Court finds defendant competent to stand trial.

### I. Background

On January 25, 2006, defendant, along with his wife, co-defendant Linda Lou May, was indicted for felon in possession of a firearm. Defendant's underlying felony convictions were for making a false medicaid claim, forgery and conspiracy. Defendant was charged with possessing

a Smith & Wesson .45 caliber pistol with an obliterated serial number and possessing a Raven Arms .25 caliber pistol.

Defendant agreed to enter into a plea agreement in September 2006, whereby he would plead guilty to Count One of the Information charging a violation of 18 U.S.C. § 922(g)(1), possession of a firearm by a felon. In exchange, the government agreed to recommend defendant receive a two-level reduction in offense level for acceptance of responsibility as well as a sentence of a year and a day, given defendant's documented health related issues. On the eve of the plea hearing, however, defendant changed his mind and refused to enter into the plea agreement. Counsel for defendant subsequently filed a motion to determine competency.

The Court granted defendant's motion and held a competency hearing on October 26, 2006. At that hearing, Dr. Hough testified to his psychological examination of defendant and findings discussed in his report. On June 23, 2006, Dr. Hough met with defendant for approximately four hours, conducted an interview and performed a number of diagnostic tests. Dr. Hough reported that defendant had a history of severe alcohol abuse and reported that he had suffered a stroke in 2002. Dr. Hough noted that with strokes, the general rule is that any residual recovery of cognitive processes usually occurs within the first year; thereafter, any deficits are permanent. Based on his testing, Dr. Hough concluded that defendant "demonstrates a borderline level of verbal intelligence as well as comparable decrements with his ability to store and retrieve information in memory, perform mental operations, or learn new information." These findings are anticipated, in light of defendant's history of severe alcohol dependence and stroke. Regarding competency issues, Dr. Hough concluded that defendant does possess a limited but acceptable understanding regarding the roles of the various officers of the court, and

of legal strategies available to a defendant. "However, this is also a defendant who cannot adequately, coherently and consistently convey to others (i.e., his attorney) the information that is relevant and crucial." It is Dr. Hough's professional opinion that defendant is not competent to proceed to trial at this time. Dr. Hough did note, however, that defendant's competency could potentially be enhanced by a thorough medical evaluation to determine if he is potentially overmedicated, or if there are drug-on-drug interactions that could be addressed. Specifically, Dr. Hough expressed concern about defendant's use of Xanax, a tranquilizer; if he is Xanax dependent, it would negatively affect his cognition.

Based on Dr. Hough's conclusions, the Court directed defendant to undergo further medical evaluation, specifically with respect to his medications. On December 21, 2006, Dr. Logan, a psychiatrist, examined defendant for approximately two hours, and his report has been admitted into evidence. Dr. Logan reported that defendant is presently taking twenty-one different medications on a daily basis, and that several have a sedative affect, including Oxycontin, Roxicet, Soma, Mixapex, Topamax, Xanax, Symbiax, and Sonata. Dr. Logan noted that the Symbiax is unnecessary and potentially harmful in a past stroke patient.[1] Dr. Logan further noted that defendant's Xanax usage is "a somewhat high dose, but not out of range in someone with a chronic anxiety disorder." Dr. Logan expressed concern about defendant's use of two antidepressants, Lexapro and Prozac, as well as the antipsychotic Symbiax. In his opinion, dependant's "primary problems with memory, thought organization and sleep, are likely a result of chronic pain, chronic effects of alcohol dependence, <u>most prominently his stroke and</u>

---

[1] Symbiax is an antipsychotic/mood stabilizer. As defendant has never had hallucinations except as a side effect or as a result of alcohol withdrawal, Dr. Logan opined that it is unnecessary and potentially harmful. Defendant states that he has not had a drink in several years.

3

cerebrovascular disease." (emphasis in original). "Also relevant are his depression and long standing sleep disorder, including sleep apnea," which is also noted to produce cognitive impairment. In summary, Dr. Logan concluded there is:

> a high likelihood that due to Mr. May's multiple physical problems that interact with his emotional difficulties, that he will not be able to assist properly in his defense. If he does proceed to trial he will need ongoing monitoring as to his comprehension and alertness. Medication[s] producing sedation likely are producing an adverse affect [sic] on his cognitive abilities and alertness but the major influence is likely due to a stroke and cerebrovascular disease. Finally, Mr. May's depression and realistic pessimism about his health status will likely influence his decision about whether to accept a plea agreement.

The government did not obtain an independent evaluation of defendant. The government argued at both hearings that defendant was able to recall facts, circumstances and thoughts regarding the crimes he is charged with and why he did what he did. While acknowledging that defendant faces many physical difficulties, the government noted that several of his drugs were deemed unnecessary and even dangerous and, regardless of his usage of medication, defendant is able to recall facts and assist counsel in his defense.

## II.     Legal Standard

This Court has conducted a hearing pursuant to 18 U.S.C. § 4241 to determine the mental competency of defendant. The statute requires that if the court finds by a preponderance of the evidence that defendant "is presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense, the court shall commit the

defendant to the custody of the Attorney General."[2]  In *Dusky v. United States*,[3] the Supreme Court set forth a two-prong test for determining whether a defendant is competent to proceed to trial.  The court must consider "(1) whether [the defendant] has sufficient present ability to consult with his lawyer with a reasonable degree of understanding; and (2) whether he has a rational as well as factual understanding of the proceedings against him."[4]  "To make that assessment, the court reviews 'evidence of defendant's irrational behavior, his demeanor at trial, and any prior medical opinion on competence to stand trial.'"[5]  The presence of some degree of mental disorder does not, standing alone, mean that a defendant is incompetent to assist in his own defense.[6]  Nor are the concerns of counsel alone sufficient "to establish doubt of a defendant's competency."[7]

### III.  Discussion

Defendant appears to concede, and the Court agrees, that the second prong of the *Dusky* test is met—defendant is sufficiently competent to understand the proceedings against him.  Both Dr. Hough's and Dr. Logan's reports never specifically claim that defendant is unable to understand the nature and consequences of the charges against him.  Rather, they focus on whether defendant is able to assist in his own defense.  Thus, the question before the Court is

---

[2]18 U.S.C. § 4241(d).

[3]362 U.S. 402 (1960).

[4]*Id*.; *Cooper v. Oklahoma*, 517 U.S. 348, 354 (1996); *see also Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999).

[5]*United States v. Williams*, 113 F.3d 1155, 1159 (10th Cir. 1997) (quoting *Drope v. Missouri*, 420 U.S. 162, 180 (1975)).

[6]*See United States v. Mackovich*, 209 F.3d 1227, 1233 (10th Cir. 2000).

[7]*Allen v. Mullin*, 368 F.3d 1220, 1246 (10th Cir. 2004) (quoting *Bryson v. Ward*, 187 F.3d 1193, 1202 (10th Cir. 1999)).

whether defendant has the ability to consult with his lawyer with a "reasonable degree of rational understanding."

Although the Court was unable to find any cases in this Circuit involving a defendant who has suffered a stroke,[8] the Tenth Circuit has analyzed the competence of a defendant who has suffered brain damage as a result of an automobile accident. In *United States v. Davis*,[9] tests revealed that the defendant's brain damage inhibited his information-processing abilities and left him with memory limitations. Despite these deficits, the court upheld a finding of competency based on an application of the *Dusky* test.[10] While acknowledging that cognitive limitations related to memory could affect competency, the court noted that the Tenth Circuit had previously rejected the argument that memory loss or amnesia creates a per se deprivation of due process.[11] Instead, the court directed evaluation of such claims on a case-by-case basis, giving particular attention to the following factors: (1) defendant's ability to testify and otherwise participate in

---

[8] The Court was able to find only one case involving a defendant who was a stroke victim. In *United States v. Helmsley*, 733 F. Supp. 600 (S.D.N.Y. 1989), the defendant was an eighty-year old man who had suffered from a number of strokes that had caused substantial brain damage. Expert testimony revealed that the defendant suffered from marked slowness of thought processing, real word-finding deficits, significant memory difficulties, alertness problems, and difficulties in reasoning and problem solving. The expert concluded that the defendant suffered from moderately severe dementia and that he would not be "cognitively fit" to respond to a hostile cross examination. The expert further concluded that the defendant's memory impairments and his difficulty in integrating recently presented facts rendered him unable to assist substantially in his own case, particularly in a case that involved an eight-week trial, with dozens of witnesses and thousands of pages of documentary evidence involving many complicated financial transactions. The court concluded that the current medical condition of the defendant effectively deprives him of his basic rights under the Sixth Amendment to assist in his own defense. *Id*. at 604. Unlike defendant May, the defendant in *Helmsley* still harbored hope for improvement, as his strokes were more recent, resulting in a continuance *sine die* in the event his health were to improve. In so ruling, the court expressed its doubt that such an improvement would occur. *Id*. There is no evidence that defendant's deficits reach the level of severity of those exhibited by the defendant in *Helmsley*.

[9] 166 F.3d 1222, 1999 WL 29160 (10th Cir. Jan. 26, 1999). *See also United States v. Housh*, 89 F. Supp. 2d 1227, 1231 (D. Kan. 2000) (following *Davis*).

[10] *See id*. at *5-6.

[11] *Id*. at *6 (citing *United States v. Borum*, 464 F.2d 896, 900 (10th Cir. 1972)).

6

his defense; (2) the permanency of the memory loss; (3) whether the crime and defendant's whereabouts, including any facts giving rise to a defense, can be accurately reconstructed without the defendant's testimony; (4) whether access to government files would aid in preparing for trial; and (5) the strength of the government's case against the defendant.[12]

In this case, tests performed by both Dr. Hough and Dr. Logan indicate that defendant, who is forty-nine years old, does have permanent memory problems caused by his stroke and years of alcohol abuse. Although defendant tended to ramble and get off track, both doctors reported that he was able to discuss his life history in sufficient detail, and was able to recall events in question that led up to his current charges without much difficulty. While defendant often became confused and his thinking became tangential, Dr. Hough reported that he was able to redirect defendant by repeating the question or making an effort to have him focus on the question. Dr. Hough opined that defendant "cannot adequately, coherently and consistently convey to others (i.e. his attorney) the information that is relevant and crucial," and that "one cannot have confidence that many of the things he reports are accurate or are distortions." The facts underlying this case are not complex—defendant is charged with felon in possession of a handgun. Defendant relayed to both doctors that he found the gun in his shed and, instead of disposing of it or notifying authorities, took it inside his house, where it was observed by his probation officer. He then hid the gun in his bedroom under a pillow. He also reported that he did not possess the other gun, which was located in a part of the house to which he did not have access. The Court believes that these are the types of memory skills that will enable defendant to

---

[12]*Id.* (citation omitted).

consult with his attorney with a reasonable degree of rational understanding.

While defendant seems preoccupied with the theory that local law enforcement planted the gun, neither Dr. Hough nor Dr. Logan reported that defendant is delusional or demonstrates signs of psychosis, although he does suffer from depression. Although several tests performed by Dr. Hough indicated that defendant's "appreciation domain" was in the impairment range, Dr. Hough found that his reasoning and understanding scores were within the minimal or no impairment range. The appreciation domain relates most directly to a defendant's "rational understanding" of the proceedings against him with his own case. Even if Dr. Hough considers some of defendant's claims about how and why the weapons were found on his property illogical or implausible, this does not mean that defendant lacks sufficient present ability to consult with his attorney.[13]

There is no question that defendant suffers from significant physical ailments, which require him to take numerous medications. Although some of the pain medications have a sedative effect, defendant told the doctors that he takes much less than the prescribed amounts. Dr. Logan recommended that defendant discontinue taking Symbiax, which he deemed unnecessary. Defendant also takes Xanax three times a day for anxiety, which can also have a sedative effect. Dr. Logan concluded, however, that this prescribed amount is not out of range for a patient suffering from chronic anxiety disorder. Dr. Logan reported that defendant was alert and responsive throughout the examination. While medications are a factor, Dr. Logan concluded that the major influence on defendant's cognitive abilities is the stroke.

The Court is thus convinced that defendant sufficiently meets the *Dusky* "rational

---

[13]*United States v. Segal*, 398 F. Supp. 2d 912, *917 (N.D.Ill.,2005).

understanding" standard. Based on the factual basis for the plea, as set out in the plea agreement, it appears that counsel for defendant has been provided sufficient evidence to reconstruct the events alleged in the Indictment and to cross-examine witnesses at trial, even without defendant's testimony or specific recollection of events. While the Court acknowledges that the stroke and alcohol abuse has left defendant with memory and information processing deficits, the Court does not believe that these deficits render him incompetent to stand trial.

Finally, the Court notes that while defendant's deficits do not render him incompetent, it is willing to provide reasonable accommodations to aid defendant at the trial. While the Tenth Circuit has not addressed the issue of accommodations, the Court joins other courts in this district in finding persuasive the reasoning of the Eleventh Circuit which stated that "[e]ven perfectly competent defendants often do not fully comprehend the intricacies of some of the defensive theories offered by their lawyers. That level of comprehension is not a requirement of competency."[14] Such accommodations could be (1) frequent breaks, (2) ongoing monitoring of defendant's sedation-causing medications, particularly Symbiax, Oxycontin and Xanax, and (3) questions, terms and proceedings explained in simple terms.[15] The Court will address specific accommodations to be made at the limine conference to be held before trial.

**IT IS THEREFORE ORDERED BY THE COURT** that defendant be found competent to stand trial.

IT IS SO ORDERED.

---

[14]*United States v. Housh*, 89 F. Supp. 2d 1227, 1231 (D. Kan. 2000) (quoting *United States v. Hogan*, 986 F.2d 1364, 1373 (11th Cir. 1993)).

[15]*Id.* at 1231 (court provided similar accommodations to defendant who had suffered head injury) (citations omitted).

Dated this  26th  day of February 2007.

           S/ Julie A. Robinson  
          Julie A. Robinson  
          United States District Judge

*United States v. Billie Eugene May*, 06-40005-JAR, Memorandum and Order.

10

*United States v. Billie Eugene May*, 06-40005-JAR, Memorandum and Order.

11